**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

WALTER EMILIO VENTURA SANTA MARIA,

Petitioner,

v.

JOSHUA JOHNSON, et al.,

Respondents.

No. 5:26-cv-3567-DSR

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND ORDERING IMMEDIATE RELEASE OF PETITIONER**

## 1. INTRODUCTION AND PROCEDURAL BACKGROUND

On June 27, 2026, Walter Emilio Ventura Santa Maria ("Petitioner"), a noncitizen who has been detained in Immigration and Customs Enforcement ("ICE") custody since on or about June 5, 2026, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") challenging his ongoing detention as violative of, inter alia, his right to due process. See Doc. No. 1. The Petition names as Respondents the Warden of the Adelanto ICE Processing Center where Petitioner is detained, the Secretary of the Department of Homeland Security, the Acting Director of U.S. Customs and Immigration Enforcement ("ICE"), the Attorney General of the United States, the Director of the Los Angeles Field Office of ICE, the Department of Homeland Security, the Executive Office of Immigration Review ("EOIR"), and ICE (collectively "Respondents").

Concurrently with the Petition, Petitioner voluntarily consented under 28 U.S.C. § 636 to have the undersigned Magistrate Judge conduct all further proceedings in this case, including trial and the entry of judgment, and also filed an Ex Parte Application for a Temporary Restraining Order. See Doc. Nos. 2, 7. The case became fully consented 24 hours later pursuant to the United States Attorney's Office's General Consent to Disposition by Magistrate Judge in Immigration Habeas Cases. See General Order 26-05 at Ex. "A" (Doc. No. 9); see also Doc. No. 10. On June 28, 2026, the Court entered an Order temporarily enjoining removal of Petitioner from the Central District of California in order to preserve jurisdiction of the Court to consider the Petition on its merits but otherwise denying the Ex Parte TRO Application. See Doc. No. 11. On July 2, 2026, Petitioner filed a Second Ex Parte TRO Application (see Doc. No. 13), and on July 6, 2026, the Court issued an Order denying that Application. See Doc. No. 14.

On June 27, 2026, the Clerk of Court served a copy of the Petition on Respondents along with a Notice of General Order 26-05 and Briefing Schedule. See Doc. No. 9. Therein, the Court "direct[ed] Respondents to show cause why the writ of habeas corpus should not be granted" and set a due date for Respondents' Answer within seven days of that Notice, i.e., June 6, 2026. Id. On June 6, 2026, Respondents filed their Answer. See Doc. No. 16. On June 9, Petitioner filed his Reply. See Doc. No. 17.

The Court has read and considered all papers filed by each side. For the reasons discussed below, the Court **GRANTS** the Petition and issues a Writ of Habeas Corpus ordering Petitioner's immediate release from immigration custody.

## 2. FACTUAL BACKGROUND

Petitioner is a native and citizen of El Salvador. See Pet. at p. 8, ln. 27. After he and his family fled El Salvador due to the Salvadoran Civil War, Petitioner first entered the United States as a child in 1988. Id. at 8:27-28. Petitioner's early life in the United States was difficult. Id. at 9:2. His childhood was marred by the

physical and psychological abuse he suffered from his father, the rape and resulting pregnancy of his sister at the hands of his father, his father's eighteen-year prison sentence and deportation to El Salvador, and the removal of his younger sisters from the home. Id. at 9:1-15. Petitioner was bullied in school and joined a "clique of Central American boys that was later absorbed by the MS-13 gang." Id. at 9:21-25. Petitioner sustained various youth convictions and lost his path to American citizenship. Id. at 9:26-28. In 2001, after his second conviction under California Vehicle Code § 10851(A), he was sentenced to prison, ordered removed, and deported to El Salvador upon release. Id. at 10:1-2; 16:13.

After being deported to El Salvador, Petitioner was detained for carrying a firearm, and because of his visible gang tattoos, he was sent to prison and detained with members of MS-13, despite having renounced his gang. Id. at 10:2-13. In 2004, upon his release from prison in El Salvador, Petitioner fled through Guatemala, Mexico, and the United States on his way to Canada. Id. at 10:14-15. While in Canada, Petitioner got married and had a child. Id. Canada deported Petitioner to El Salvador in 2007. Id. at 10:18. Upon his return to El Salvador, Petitioner faced extortion and abuse from both MS-13 gang members and the Salvadorian police. Id. at 10:20-28. After being falsely accused of various crimes and found innocent each time, a "judge warned Petitioner to leave El Salvador because he was likely to be killed if he stayed." Id. at 11:10-13. Sometime after his second release from Salvadorian prison, Petitioner fled to the United States. Id. at 11:22-23.

In 2014, Petitioner was convicted in New York of a misdemeanor for driving while intoxicated. Id. at 11:23-24. In 2015, he was served a Notice of Intent/Decision to Reinstate Prior Order under the Immigration and Nationality Act ("INA") § 241(a)(5) and 8 U.S.C. § 1231(a)(5), based on his prior order of removal from April 10, 2001. Id. at 11:26-28; 16:13-14. After expressing a fear of a torture, his claim was reviewed by an immigration officer who determined that Petitioner

had a reasonable fear. Id. at 11:28; 12:1. On October 19, 2016, an Immigration Judge ("IJ") issued a Deferral of Removal under the Convention Against Torture ("CAT"). Id. at 12:2-4.

Sometime in 2016, Petitioner was released from immigration custody on supervised release. Id. at 16:28. From 2016 to June 5, 2026, Petitioner lived freely in the United States, reported as required, and complied with every condition of his release. Id. at 17:1-2. On June 9, 2025, Petitioner got married. Id. at 12:6-7. Until his re-detention on June 5, 2026, he resided in Los Angeles with his wife and child. Id. at 12:7-8. He shares property with his extended family, all of whom are United States citizens. Id. at 12:9-10. Prior to his re-detention, Petitioner worked as a builder, completed a contractor certification course, and provided handyman work for the pastor at his church. Id. at 12:11-14.

On June 5, 2026, Petitioner reported to the ICE office in Los Angeles for his annual employment document re-authorization. Id. at 12:16-17. He was taken into federal custody without provision of any paperwork, or an opportunity to be heard before re-detention; nor was he given an informal interview.[1] See Pet. at 12:17-22. Petitioner was transferred to Adelanto ICE Detention Facility that same evening. Id. at 12:19. After Petitioner refused to sign paperwork or provide fingerprints, seven ICE agents threw him to the ground and forced him to sign. Id. at p. 12, lns. 27-28; p. 13, lns. 1-4.

[1] Respondents describe a different set of events that led to Petitioner's re-detention. See Answer at 3:27-4:5. Respondents state that Petitioner was taken into custody on May 26, 2026, by Los Angeles Enforcement and Removal Operations ("ERO") for the purpose of third-country removal. Id. After Petitioner expressed a fear of removal to Mexico, Respondents cancelled his flight arrangements and referred him to U.S. Citizen and Immigration Services ("USCIS") for fear screening. Id. On or about June 18, 2026, "USCIS interviewed Petitioner about his fear of removal to Mexico and determined that Petitioner failed to establish that it was more likely than not that he would be persecuted or tortured in Mexico." Id. Respondents do not dispute, however, the lack of notice and an opportunity to be heard regarding Petitioner's re-detention.

Petitioner alleges he has not been provided with a reason for why he was re-detained, a timeline by which ICE plans to deport him, or what country they plan to deport him to. Id. at 13:9-11. On June 21, 2026, Petitioner's wife reported that Petitioner received a screening while detained where he was asked yes/no questions and was told that he would receive an adverse determination immediately and be sent to Mexico. Id. 13:15-19. Respondents assert in their Answer that they are "prepared to remove Petitioner to Mexico." Answer at 4:4-5.

**3. CLAIMS AND RELIEF SOUGHT**

Petitioner argues that his supervised release was revoked in violation of 8 C.F.R. § 241.4 and his detention violates both the Due Process Clause of the Fifth Amendment and 8 U.S.C. § 1231(a)(6). See Pet. at 16-24. He also contends that removal to a third country without sufficient process violates the Due Process Clause and 8 C.F.R. §§ 241.8(e)-(f), 208.31, 1208.31. Id. at 21-22. Respondents argue that Petitioner is subject to mandatory detention under 8 U.S.C. § 1231(a) because he is subject to a reinstated removal order. See Answer at 2:14-22. Further, Respondents argue that third country removals are lawful and ERO is ready to remove Petitioner to Mexico. Id. at 9:5-11.

Petitioner's requested relief includes an order requiring his immediate release or an order requiring Respondents either to refer Petitioner for his required reasonable fear interview or to release him under the conditions of his prior release. Pet. at 24, prayer ¶¶ 4, 5. Further, Petitioner requests a declaration stating that his deferral of removal under CAT remains in effect and any document he signed on June 5, 2026, did not terminate that referral or waive that right. Id. at ¶ 6. Lastly, Petitioner requests an order that he may not be again re-detained absent proper notice. Id. at ¶ 9.

**4. LEGAL STANDARD AND THE EXHAUSTION REQUIREMENT**

Habeas relief extends to those who can show they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

§ 2241(c)(3). Although Congress has barred courts from reviewing certain discretionary decisions concerning detention or release of noncitizens subject to removal proceedings, see 8 U.S.C. §§ 1226(e), 1252(g), federal courts retain jurisdiction to "review related 'constitutional claims or questions of law.'" Martinez v. Clark, 36 F.4th 1219, 1224 (9th Cir. 2022) (quoting Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011)), vacated on other grounds by ___ U.S. ___, 144 S. Ct. 1339, 218 L.Ed.2d 418 (2024). Petitioner makes such reviewable claims here, and Respondents do not contest the point.

Habeas petitioners seeking relief under 28 U.S.C. § 2241 generally must first exhaust all available administrative remedies. See Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012). However, because this requirement is "prudential" and not a "jurisdictional prerequisite," it is subject to waiver. Id. at 1045-46; Arango Marquez v. INS, 346 F.3d 892, 897 (9th Cir. 2003) ("[T]he district court properly waived exhaustion, because the exhaustion requirement in § 2241 cases is prudential, rather than jurisdictional."). Here, neither Petitioner nor Respondents address the exhaustion requirement in their papers. See generally Doc. Nos. 1, 16, 17. Thus, the Court finds that any failure by Petitioner to exhaust administrative remedies in this matter is not a bar to this Petition. The Court therefore proceeds to consider the merits of the Petition.

**5. DISCUSSION**

Although Petitioner may not presently be removed to his birthplace of El Salvador in light of the Immigration Judge's 2016 Order granting him deferral of removal there, as noted above, Respondents have stated that they are ready to remove Petitioner instead to Mexico. Therefore, the question of whether Petitioner's current pre-removal detention is lawful is secondary to the legality of such third-country removal, because if Respondents can lawfully remove Petitioner to Mexico upon expiration of this Court's temporary stay with the entry of

judgment in this case, the question of the legality of further pre-removal detention is moot. Therefore, the Court will first address the issues regarding removal.

**A. Petitioner May Not be Removed to El Salvador**

As an initial matter, Petitioner is correct in that he may not be removed to El Salvador in light of his deferral of removal. See Pet. at p. 19, ¶ 6(d). Where an applicant has been granted withholding of removal, "notwithstanding the order of removal, the noncitizen may not be removed to the designated country of removal, at least until conditions change in that country." Nasrallah v. Barr, 590 U.S. 573, 582 (2020) (citing 8 C.F.R. § 1208.17). Further, Petitioner cannot be removed to El Salvador unless his deferral of removal is terminated pursuant to 8 C.F.R. § 1208.17. Here, there is no indication that Respondents followed any of the procedures required for termination of withholding of removal under 8 C.F.R. § 1208.17. Indeed, Respondents do not contest the fact that Petitioner may not be removed to El Salvador. See generally Answer. Respondents instead state they intend to remove Petitioner to a third country – Mexico.

**B. Relevant Background Regarding Third Country Removal**

INA § 241(b)(3)(A) provides that "the Attorney General may not remove [a noncitizen] to a country if the Attorney General decides that the [noncitizen's] life or freedom would be threatened in that country because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Despite the use of the word "may," this provision establishes a mandatory prohibition, not a discretionary one. See Camposeco-Montejo v. Ashcroft, 384 F.3d 814, 819 (9th Cir. 2004). The Ninth Circuit has consistently held that "withholding of removal is not discretionary" and that the Attorney General may not remove a noncitizen to a country where his life or freedom would be threatened on a protected ground. Delgado v. Holder, 648 F.3d 1095, 1101 (9th Cir. 2011). The Supreme Court has likewise recognized that relief

must be granted where eligibility is established. Moncrieffe v. Holder, 569 U.S. 184, 187 n.1 (2013).

Similarly, regulations implementing the Convention Against Torture require protection where a noncitizen establishes that he is "more likely than not to be tortured in the country of removal." 8 C.F.R. § 208.16(c)(1). Where that standard is met, relief "shall be granted" absent narrow exceptions. 8 C.F.R. § 208.16(d)(1). Thus, both statutory withholding and CAT protection impose mandatory limits on the government's removal authority. See Johnson v. Guzman Chavez, 594 U.S. 523, 531 (2021).

Because these protections are mandatory, the government must provide a meaningful procedural mechanism for noncitizens to assert fear-based claims prior to removal. The governing regulations reflect this requirement. Where a noncitizen expresses fear of removal, the agency must refer the individual for a reasonable fear determination by an asylum officer. See 8 C.F.R. §§ 208.31(b), 241.8(e); Ortiz-Alfaro v. Holder, 694 F.3d 955, 956 (9th Cir. 2012). These provisions use mandatory language, requiring that the noncitizen "shall be immediately referred" for such screening. 8 C.F.R. § 241.8(e). The purpose of this framework is to ensure that noncitizens are not removed without first receiving an opportunity to establish eligibility for protection from persecution or torture.

On March 30, 2025, DHS issued "Guidance Regarding Third Country Removals" ("Noem Memo")[2], which materially alters this process. ICE's Noem Memo and related directives permit removal based on diplomatic assurances deemed credible by the State Department, without any requirement that ICE affirmatively inquire whether the individual fears removal or ensure an individualized fear review. Noem Memo at 1–2. Any screening occurs only if the

---

[2] U.S. Dep't of Homeland Security, Guidance Regarding Third Country Removals (Mar. 30, 2025), available at https://immigrationlitigation.org/wpcontent/uploads/2025/04/43-1-Exh-A-Guidance.pdf

noncitizen affirmatively raises such fear, often on an expedited timeline. Id. This approach diverges from the regulatory framework, which is designed to ensure meaningful identification and adjudication of fear-based claims prior to removal. As a result, the procedures contemplated by the Noem Memo heighten the risk that noncitizens will be removed to countries where they face persecution or torture without adequate procedural safeguards.

On March 23, 2025, noncitizens filed D.V.D. v. DHS, a putative nationwide class action challenging DHS's third-country removal practices and alleging violations of 8 U.S.C. § 1231(b)(3), CAT, and the Due Process Clause. See D.V.D. v. DHS, No. 1:25-cv-10676-BEM (D. Mass.). On April 18, 2025, the District Court certified a nationwide class and issued a preliminary injunction requiring DHS to provide certain procedural protections prior to third-country removals. D.V.D. v. DHS, 778 F.Supp.3d 355 (D. Mass 2025). On June 23, 2025, however, the Supreme Court stayed the preliminary injunction pending further proceedings. DHS v. D.V.D., 145 S. Ct. 2153 (2025). Following that stay, DHS issued interim guidance in July 2025 addressing implementation of third-country removal procedures ("July Guidance Memo").[3] The July Guidance Memo is identical to the Noem Memo except that, in cases where diplomatic assurances do not exist, it provides that an officer will serve a "Notice of Removal" with interpretation. July Guidance Memo at 1. That guidance also provides that DHS may effectuate removal 24 hours after serving notice; however, "[i]n exigent circumstances," with approval from chief counsel of DHS or ICE, DHS may execute removal to the third country with a mere six hours' notice if ICE provides the noncitizen "means and opportunity to speak with an attorney." Id.

---

[3] Third Country Removals Following the Supreme Court's Order in Department of Homeland Security v. D.V.D., No. 24A1153 (U.S. June 23, 2025) (July 9, 2025), https://immigrationlitigation.org/wpcontent/uploads/2025/07/190-1-July-9- Guidance.pdf.

On February 25, 2026, the district court in D.V.D. entered final judgment setting aside DHS's third-country removal policy and concluding that certain procedural protections are required prior to third-country removals. D.V.D. v. DHS, 821 F.Supp.3d 102, 167-68 (D. Mass. 2026). The court declared that class members have the right to both "meaningful notice before removal to any third country" as well as "a meaningful opportunity to raise a country-specific claim against removal before removal to any third country." Id. The First Circuit initially stayed that judgment, then ultimately affirmed the District Court's judgment requiring meaningful notice and a meaningful opportunity to raise a country-specific claim against removal to a third country. See D.V.D. v. DHS, ___ F.4th ___, 2026 WL 2797801, at *20 (1st Cir. Sept. 18, 2026). On September 29, 2026, the Supreme Court stayed the District Court's February 25, 2026, Order and Judgment, and granted certiorari, inter alia, on the question of "Whether the Government's Guidance on third-country removals is unlawful under 8 U. S. C. § 1231(b), the Due Process Clause, or FARRA/CAT and its implementing regulations." DHS v. D.V.D., ___ S.Ct. ___, 2026 WL 2917860 (Sup. Ct. Sept. 29, 2026).

**C. Third Country Removal to Mexico**

Pending the ultimate outcome of the stayed D.V.D. litigation, existing law applicable here supports the conclusion that the Fifth Amendment requires meaningful pre-removal procedural protections before a noncitizen may be removed to a third country not designated in the original removal order. See Reno v. Flores, 507 U.S. 292, 306 (1993); see also Trump v. J.G.G., 145 S. Ct. 1003, 1006 (2025). The Ninth Circuit has held that where removal implicates potential persecution or torture, due process requires notice and a meaningful opportunity to present fear-based claims before removal is executed. See Andriasian v. I.N.S., 180 F.3d 1033, 1041 (9th Cir. 1999); see also Ibarra-Perez v. United States, 154 F.4th 989, 995 (9th Cir. 2025) ("DHS must also 'notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and

for withholding of deportation to the country to which they will be deported'; otherwise, DHS violates their constitutional right to due process." (quoting Andriasian, 180 F.3d at 1041)

Congress and the implementing regulations establish mandatory procedures designed to safeguard these rights. 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 208.31. Under 8 U.S.C. § 1231(b)(3), the government may not remove a noncitizen to any country where the individual's life or freedom would be threatened on account of a protected ground, and parallel protections apply under the CAT. 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 208.16(c). Consistent with these obligations, noncitizens who express fear of return are entitled to a reasonable fear screening before an asylum officer, followed by immigration judge review if the determination is negative. 8 C.F.R. § 208.31(c)– (g). In the context of reinstated removal orders, the regulations impose a mandatory referral requirement such that a noncitizen who expresses fear "shall be immediately referred" to an asylum officer for a reasonable fear determination. 8 C.F.R. § 241.8(e). The Ninth Circuit has recognized that this provision creates a nondiscretionary procedural safeguard requiring immediate referral upon an expression of fear. Ortiz-Alfaro v. Holder, 694 F.3d 955, 956 (9th Cir. 2012) ("§ 241.8(e) creates an exception by which [a noncitizen] who asserts 'a fear of returning to the country designated' in his reinstated removal order is 'immediately' referred to an asylum officer who must determine if the [noncitizen] has a reasonable fear of persecution or torture in accordance with 8 C.F.R. § 208.31"). The regulations further require that, absent exceptional circumstances, the reasonable fear determination be conducted within ten days of referral. 8 C.F.R. § 208.

Courts have repeatedly held that due process is violated where third-country removal procedures fail to provide adequate notice and a meaningful opportunity to raise fear-based claims before removal is executed. See, e.g., Kumar v. Wamsley, No. C25-2055-KKE, 2025 WL 3204724, at *9 (W.D. Wash. Nov. 17, 2025);

Gomez v. Mattos, No. 2:25-CV-00975-GMN-BNW, 2025 WL 3101994, at *6 (D. Nev. Nov. 6, 2025); Vishal v. Chestnut, 811 F. Supp. 3d 1179, 1188 (E.D. Cal. 2025). Accordingly, these courts have found that the government's third country removal policy as outlined in the Noem Memo and July Guidance Memo violates due process and is contrary to Ninth Circuit precedent. See, e.g., Kumar, 2025 WL 3204724, at *6 (noting "overwhelming authority against" the policy); Vu v. Noem, No. 1:25-cv-01366-KES-SKO (HC), 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025) ("ICE's policy is contrary to Ninth Circuit precedent.... Other courts in this circuit have recognized that this policy is unconstitutional, and this Court agrees with those well-reasoned decisions."); Nguyen, 796 F.Supp.3d at 728 ("This policy contravenes Ninth Circuit law, as laid out above. It would be impossible to comply both with Ninth Circuit precedent and the policy."). These decisions emphasize that meaningful process requires advance written notice of the proposed third country designation and a genuine opportunity to present a fear-based claim before removal proceeds. See Elshourbagy v. Bondi, No. 2:25-CV-02432-TL, 2025 WL 3718993, at *7 (W.D. Wash. Dec. 23, 2025) (citing Aden v. Nielsen, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019)).

Some courts have also concluded that the availability of post-determination mechanisms, such as motions to reopen, does not cure the constitutional deficiency where pre-removal process is inadequate. See, e.g., A.A.M. v. Andrews,- 815 F.Supp.3d 1124, No. 1:25-cv-1514-DC-DMC (HC), 2025 WL 3485219, at *11 (E.D. Cal. Dec. 4, 2025); Baltodano v. Bondi, No. C25-1958RSL, 2025 WL 3484769, at *6 (W.D. Wash. Dec. 4, 2025). Instead, due process requires that fear-based claims be meaningfully adjudicated before removal to a third country is effectuated, including the opportunity to pursue withholding or CAT protection in proceedings before an immigration judge. Baltodano, 2025 WL 3484769, at *6.

Petitioner in this case has sufficiently shown that Respondents' actions and policies failed to afford him constitutionally adequate process. The record

demonstrates that Respondents have already initiated removal to a third country – Mexico – thereby triggering Petitioner's right to meaningful pre-removal procedures, including adequate notice and a genuine opportunity to present fear-based claims before removal is effectuated. See Pet. at 22, ¶ 17; see also Andriasian, 180 F.3d at 1041. However, Petitioner claims that he did not receive adequate notice regarding his removal to Mexico before the removal process was initiated. See Pet. at p. 13, lns. 9-11 ("no ICE official has provided papers showing Petitioner the reason for his re-detention, the timeline by which they plan to report him, nor to what country they plan to deport him."). Respondents do not dispute the point. See generally Answer. Moreover, regardless of whether Petitioner did or did not receive adequate notice, noncitizens who express fear of return, like Petitioner, are also entitled to a reasonable fear screening before an asylum officer, followed by immigration judge review if the determination is negative. 8 C.F.R. § 208.31(c)– (g). Here, the parties agree that Petitioner expressed a fear of removal to Mexico. See Pet. at 20, ¶ 10; Answer at 3:27-28. Accordingly, Petitioner was entitled to a reasonable fear screening before an asylum officer, followed by immigration judge review if the determination was negative.

Although the parties dispute the adequacy of the screening/interview[4] before the asylum officer that Petitioner received, Respondents do not contest Petitioner's claim that he was not afforded immigration judge review of the asylum officer's negative reasonable fear determination. See Answer at 4:2-4. Pursuant to 8 C.F.R. § 208.31(c)– (g), Petitioner was entitled to immigration judge review of that resulting negative determination. Under 8 C.F.R. § 208.31(f):

---

[4] According to Respondents, "USCIS interviewed Petitioner about his fear of removal to Mexico and determined that Petitioner failed to establish that it was more likely than not that he would be persecuted or tortured in Mexico." See Answer at 4:2-4. However, according to Petitioner, he received "only a truncated, yes-or-no screening—unlike the substantive reasonable-fear interview Petitioner received in 2015." See Pet. at 20, ¶ 11.

> "If the asylum officer determines that the alien has not established a reasonable fear of persecution or torture, the asylum officer shall inform the alien in writing of the decision and shall inquire whether the alien wishes to have an immigration judge review the negative decision, using the Record of Negative Reasonable Fear Finding and Request for Review by Immigration Judge, on which the alien must indicate whether he or she desires such review. If the alien refuses to make an indication, DHS shall consider such a response as a decision to decline review."

Here, the asylum officer determined that Petitioner did not establish a reasonable fear of persecution or torture in Mexico. See Answer at 4:3-4. Although there is no indication that the asylum officer informed Petitioner in writing of the decision or inquired whether Petitioner wished to have an Immigration judge review the decision, Petitioner has requested a "de novo immigration-judge review of any adverse determination" (see Pet. at p. 20, ¶ 11) in accordance with the regulation, yet he has not been provided with any review. Accordingly, the procedures that Respondents employed to initiate Petitioner's removal to a third country were insufficient. If Respondents wish to effectuate Petitioner's removal to a third country, the relevant procedures must be followed. Having found that Respondents may not execute Petitioner's removal to a third country based on deficient procedures, the Court will next determine whether Respondents have a lawful basis to continue detaining Petitioner.

**D. Respondents' Revocation of Petitioner's Supervised Release and Resulting Detention of Him Violates Procedural Due Process**

The record in this case is clear that Petitioner is subject to a final order of removal. See Pet. at 16:13-14; see also Answer at 4:9. Equally clear is that

Petitioner was released on supervision nearly a decade prior to his re-detention earlier this year. The issue regarding the lawfulness of Petitioner's current detention is therefore whether Respondents violated the applicable regulations and Petitioner's due process rights when they revoked his supervised release and re-detained him at his annual employment document re-authorization appointment on June 5, 2026.

The provisions of 8 U.S.C. § 1231(a) govern the detention, release, and removal of noncitizens – like Petitioner – subject to a final order of removal. Such individuals are subject to a 90-day detention period while removal is pursued. See 8 U.S.C. § 1231(a)(1). If the noncitizen is not removed during this 90-day period, however, he or she is "subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3). The noncitizen may be detained beyond the 90-day removal period under certain conditions, but "if released, shall be subject to the terms of supervision in paragraph (3)." 8 U.S.C. § 1231(a)(6).

That appears to be what happened here – Petitioner's 90-day detention period following his 2015 reinstated removal order expired long ago and Petitioner was therefore on supervised release when he went to his employment document reauthorization appointment on June 5, 2026. See Pet. at 16, ¶ 2; 17, ¶ 5. His arrest and re-detention that day was therefore a de facto revocation of that supervised release. Petitioner claims in this case that such revocation violated his due process rights because it did not comply with the applicable regulations governing the procedural steps required for such revocation. Id. at 17-18, ¶ 6(a)-(d). On the record before this Court, Petitioner is correct.

Petitioner has a constitutional liberty interest in his continued release from detention under the terms of his supervised release. See Mahalati-Shirazi v. Noem, 823 F.Supp.3d 1042, 1049 (C.D. Cal. 2026) (citing Sun v. Santacruz, No. EDCV-25-02198-JLS-JCx, 2025 WL 2730235, at *5-6 (C.D. Cal. Aug. 26, 2025) and Yang v. Kaiser, No. 2:25-CV-02205-DAD-AC (HC), 2025 WL 2791778, at *7-10 (E.D. Cal. Aug.

20, 2025)). Respondents may not deprive Petitioner of that right without due process of law. U.S. Const. amend. V. Due process requires, at a minimum, that an agency follow its own applicable regulations. Constantinovici v. Bondi, 806 F. Supp. 3d 1155, 1164 (S.D. Cal. 2025) ("It is well-established that government agencies are required to follow their own regulations") (citing United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 268 (1954) and United States v. Ramos, 623 F.3d 672, 683 (9th Cir. 2010)). "Numerous district courts, including courts in the Ninth Circuit, have determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered." Id. (internal quotations and citations omitted).

Revocation of the supervised release status of a non-citizen subject to a final order of removal is governed by Title 8 C.F.R. § 241.4(l). That regulation

> requires that an alien previously released under an order of supervision who is returned to custody for alleged violation of that order "be notified of the reasons for revocation" "[u]pon revocation." The regulation also requires that the alien "will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." If re-release does not occur following the informal interview, the alien must receive notification of a "records review and scheduling of an interview" "which will ordinarily be expected to occur within approximately three months after release is revoked."

Zhang Haixiang v. Dep't of Homeland Sec., No. ED CV 25-1890-JLS(E), 2025 WL 3683126, at *3 (C.D. Cal. Dec. 2, 2025), report and recommendation adopted sub

nom. Zhang v. Dep't of Homeland Sec., No. ED CV 25-1890-JLS(E), 2025 WL 3679184 (C.D. Cal. Dec. 18, 2025).

"[Noncitizens] granted withholding of removal under section 241(b)(3) of the [Immigration and Nationality Act] or withholding or deferral of removal under the Convention Against Torture who are otherwise subject to detention are subject to the provisions of [Part 241 of Title 8 of the Code of Federal Regulations]." 8 C.F.R. § 241.4(b)(3). On the record before the Court in this case, ICE did not comply with any of those requirements. Petitioner was not notified of the reason for the revocation of his order of supervision "upon revocation" or apparently at any time since. See Pet. at 18:2-4. Nor is there any indication that Petitioner was afforded any "initial informal interview" promptly after his re-detention to afford him an opportunity to respond to the reasons for revocation that were not stated in the non-existent notice. Id. Of course, since neither of those required procedures – the notice nor the initial informal interview – occurred, Petitioner also did not receive the required notification of a "records review and scheduling of an interview."

Respondents deprived Petitioner of his recognized interest in his liberty pursuant to his order of supervision. They did so without compliance even with their own regulations for revocation. Such revocation was therefore done without due process of law. Accordingly, the resulting detention is in violation of the Constitution and laws of the United States. Habeas relief is appropriate.

**E. Appropriate Relief**

The parties disagree about the appropriate remedy. Petitioner seeks release from detention under the terms of his original order of supervision. Respondents argue that release is not the proper remedy even if procedural inadequacies are found, and urge instead that the appropriate remedy would be rectifying the procedural deficiency.

On this record, the revocation of Petitioner's supervised release and resulting re-detention on June 5th was unlawful and warrants the issuance of habeas relief in the form of Petitioner's immediate release from custody and restoration of the same conditions of supervised release he was subject to prior to the defective revocation on June 5, 2026. See Zhang Haiziang, 2025 WL 3685726, at *3; Ghafouri v. Noem, No. 3:25-CV-02675-RBM-BLM, 2025 WL 3085726, at *6 (S.D. Cal. Nov. 4, 2025) (noting "District courts across the country, including in the Ninth Circuit, 'have determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered'" and collecting cases).

"Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, No. 5:25-cv-2694-KK-ADS, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's supervised release under the conditions applicable before the unlawful revocation of that release on June 5th. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id. "Providing Petitioner an interview ex post facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release." Esmail v. Noem, No. 2:25-cv-8325-WLH-RAO, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025). Accordingly, the Court orders Respondents to release Petitioner immediately.

The Court further determines that the record supports Petitioner's request for an order that Respondents not re-detain him absent compliance with the

applicable procedural requirements for revocation of supervised release. See Pet. at 25, prayer ¶ 9. Respondents did not dispute – or even address – this request in their Answer. Habeas relief is not limited to "discharge of the applicant from physical custody. Its mandate is broad with respect to the relief that may be granted." Carafas v. LaVallee, 391 U.S. 234, 239 (1968). Title 28 U.S.C. § 2243 expressly provides that "[t]he court shall . . . dispose of the matter as law and justice require." Even after his return to supervised release as ordered here, Petitioner will remain subject to the final order of removal, and Respondents will likely continue trying to enforce that order. The Court finds that law and justice require a specific injunction to prohibit reoccurrence of the same violation of Petitioner's rights that occurred here as Respondents continue their efforts to remove Petitioner.

A permanent injunction may be entered, at the discretion of the District Court, where a petitioner shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006). The Court finds Petitioner has made such a showing here when it comes to revocation of his supervised release and re-detention without adequate process. He has suffered an irreparable injury by being held in detention for weeks following the defective revocation of his supervised release, and would again if Respondents repeat such conduct. Legal remedies such as damages would be inadequate to cure the unconstitutional loss of his liberty. And the balance of hardships and public interest between on the one side merely requiring Respondents to provide basic due process – to follow their own regulations – in the event they again seek to revoke his supervised release,

and on the other side forcing Petitioner again to suffer detention and sue to win his release, tips strongly in Petitioner's favor.

**6. CONCLUSION**

Petitioner is presently in the custody of Respondents in violation of the Constitution or laws or treaties of the United States; thus, a Writ of Habeas Corpus should issue pursuant to 28 U.S.C. § 2241 compelling his immediate release. Moreover, the Court further finds that habeas relief is available, and appropriate in this circumstance, to assure that Petitioner receives adequate procedural protections to which he is entitled by the Constitution, applicable statutes and applicable regulations, before he is removed to any third country.

IT IS THEREFORE ORDERED that:

1. The Petition for Writ of Habeas Corpus is GRANTED.
2. Respondents shall immediately release Petitioner **Walter Emilio Ventura Santa Maria (A-094-206-682)** from custody and reinstate his supervised release under the same conditions that were in place before his re-detention on June 5, 2026.
3. Respondents shall also provide Petitioner with a copy of this Order at or near the time of release.
4. Within three days of the date of this Order, Respondents shall file a Notice of Release confirming Petitioner's release.
5. Respondents shall not re-detain Petitioner absent compliance with the applicable law, including constitutional provisions, statutory law, case law, and applicable regulations governing revocation of his supervised release.

**IT IS SO ORDERED.**

DATED: November 2, 2026

HON. DANIEL S. ROBERTS
UNITED STATES MAGISTRATE JUDGE